

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GENE KAUFMAN, ARCHITECT, P.C.,     :

       Plaintiff       :     **10    3358**

                   :

       v.            :    CIVIL ACTION NO. 10-CV-

                   :

401 RACE STREET PARTNERS LP,     :
ARC PROPERTIES INC., MICHAEL     :
SALOVE COMPANY, FC DEVELOPMENT     :
GROUP LLC, URBAN DEVELOPMENT     :
PARTNERS, DESIGN COLLECTIVES INC.,     :
DALE CORPORATION, GUY GINDHART +     :
PLANNING + PROJECT MANAGEMENT +     :
DESIGN, ROBERT AMBROSI, AND     :
CARL FREEDMAN     :

                   :

       Defendants      :

JUL 8 - 2010

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

## COMPLAINT

    Plaintiff, Gene Kaufman, Architect, P.C., ("Kaufman Architect"), by and through its attorneys, Conrad O'Brien, PC, by way of Complaint says:

## PARTIES

    1.     Kaufman Architect is a New York corporation with a principal place of business at 525 Broadway, 8th Floor, New York, New York, 10012.

    2.     Kaufman Architect was founded by Gene Kaufman more than twenty years ago.

    3.     Mr. Kaufman was educated at Cornell University. Prior to starting his own practice, he was the assistant State Architect of New Mexico; Director of Design for an architectural firm in Switzerland; and an Associate at the internationally renowned Rafael Vinoly Architects in New York City.

4.      Kaufman Architect specializes in urban developments, and most notably, hotel architecture.

5.      Kaufman Architect is the leading architectural firm on hotel projects in the Northeastern United States with about dozen new hotels currently in construction with an estimated total construction value of $250,000,000 and more than a dozen new hotels in the design and planning phase.

6.      Kaufman Architect has gained national acclaim for its hotel and other design work.

7.      For instance, it won the nationwide 2010 design competition run by the American Institute of Architects for the development and design of temporary/permanent housing for use in natural disaster relief, such as Hurricane Katrina and Haiti Earthquake relief.

8.      Kaufman Architect was recently praised for creating a mixed use development in Williamsburg, New York which will combine hotel, residential, and parking in one development.

9.      Kaufman Architect has become the premier architect of hotel architecture in the northeastern United States. Its principal, Mr. Gene Kaufman, is set to be honored in a cover story for *Hotel Business Design* magazine in September 2010 recognizing his contributions to hotel design.

10.     401 Race Street Partners, LP ("401 Race Street Partners") is a Delaware corporation with a registered office at 380 Red Lion Road, Suite 202, Huntingdon Valley, Pennsylvania, 19006.

11.     401 Race Street Partners owns an existing structure at 401 Race Street, Philadelphia, Pennsylvania ("the Site").

12.     ARC Properties, Inc. ("ARC") is a New Jersey corporation with its principal place of business at 1401 Broad Street, Suite 1, Clifton, New Jersey 07013.

13.     ARC is the principal developer of the Site.

14.     Robert Ambrosi is the chairman and CEO of ARC.

15.     Robert Ambrosi, upon information and belief, is a New Jersey citizen who resides in New Jersey and who regularly conducts business in Pennsylvania, through his work for ARC Properties and its affiliated companies.

16.     FC Development Group LLC ("FC Development") is a New Jersey limited liability company with a principal place of business at 201 A Berlin Road, Cherry Hill, New Jersey, 08034.

17.     FC Development is also a developer of the Site.

18.     Carl Freedman and Jason Kessler were the agents of FC Development in relationship to the Site.

19.     Carl Freedman, upon information and belief, is a New Jersey citizen who resides in New Jersey and who regularly conducts business in Pennsylvania, through his work for FC Development.

20.     Urban Development Partners ("Urban Development") is a New York limited liability company with a principal place of business at 1776 Broadway, Suite 606, New York, New York, 10019.

21.     Urban Development is a developer of the Site.

22.     Gary Davis was the agent of Urban Developers in relationship to the Site.

23.     Michael Salove Company is a Pennsylvania corporation with its principal place of business at 1700 Market Street, 17th Floor, Philadelphia, Pennsylvania, 19103.

24.     Michael Salove Company is a developer of the Site and acted as the broker for components of the Site.

25.     Andi Pesacov has represented Michael Salove Company with respect to the development of the Site and with respect to its role as a broker.

26.     Design Collective Inc. ("Design Collective") is a Maryland corporation with a principal place of business at 601 East Pratt Street, Suite 300, Baltimore Maryland, 21202-3123.

27.     Upon information and belief, Design Collective was provided an unauthorized copy of architectural plans created by Kaufman Architect and used this design to create a derivative work for the Site.

28.     Design Collective also participated in meetings, held in Pennsylvania, that pertained to the development of the Site.

29.     Upon information and belief, Michael Goodwin was the primary contact for Design Collective as to its work for the Site.

30.     Dale Corporation ("Dale") is a Pennsylvania corporation with a principal place of business at 70 Limekiln Pike, Glenside, PA 19038.

31.     Upon information and belief, Dale has participated in the design and development of the Site.

32.     Upon information and belief, Gregory Hallquist and Jay Ferraro were the primary contacts for Dale as to its work for the Site.

33.     Upon information and belief, Guy Gindhart + Planning + Project Management + Design ("Gindhart Design") is a Pennsylvania business with places of business at 1501 Locust Street Philadelphia, Pennsylvania 19102 and 24 Rocky Ridge Road, Jim Thorpe, Pennsylvania 18229.

34.      Upon information and belief, Guy Gindhart was the primary contact for Guy Gindhart + Planning + Project Management + Design.

## JURISDICTION

35.      The Complaint is based on copyright infringement and arises under the copyright laws as codified at 17 U.S.C. § 101 *et seq.* The Complaint is further based on the common laws of the Commonwealth of Pennsylvania.

36.      This Court has subject matter jurisdiction under 17 U.S.C. § 411 and 28 U.S.C. §§ 1331, 1332, 1338 and 1367.

37.      This Court has jurisdiction over all Defendants with respect to the causes of action set forth herein, in that Defendants have committed the acts complained of herein in this District, and have threatened to purposefully commit further acts complained of herein in this District. Moreover all the Defendants reside in or can be found in this District.

38.      Venue is proper in this District under 28 U.S.C. §§ 1400; 1391(b) and (c) in that the Defendants reside in or can be found in this District, the claims arose in this District, and all Defendants are subject to personal jurisdiction in this District.

## FACTS

39.      ARC Properties, through Mr. Ambrosi, had an on-going relationship with Kaufman Architect, and in particular with Mr. Kaufman, in the Fall of 2009.

40.      At that time, ARC Properties and Kaufman Architect were discussing the development of a hotel at 2040 Market Street, Philadelphia, Pennsylvania.

41.      During discussions in Philadelphia about developing a hotel at 2040 Market Street, Mr. Ambrosi solicited Mr. Kaufman for architectural work for a site located at 401 Race Street, Philadelphia, Pennsylvania ("the Site").

42.    The Site is the former Pincus Brothers Maxwell building, which is an ideal location for a signature mixed use building (residential, hotel, retail, parking).  The Site borders Philadelphia's historic district, is in close proximity to the Pennsylvania Convention Center, and enjoys pictorial views of the Ben Franklin Bridge.

43.    As explained by ARC Properties, the plan for the Site was to create a 140-plus room hotel, 50-plus residential units, and about 50,000 square feet of retail use, as well as an attenuated garage.  This plan was based on a feasibility study.

44.    The purpose of the hotel would be to attract tourists and visitors to the adjacent historical Philadelphia landmarks as well as to attract attendees of functions and conventions at the Pennsylvania Convention Center.

45.    Mr. Ambrosi explained to Mr. Kaufman that some initial plans were drafted by an architectural firm named Daniel Smith and Associates ("DSA"),

46.    Mr. Ambrosi further explained that the DSA plans had failed to attract the investor interest needed in the project because the plans were unable to demonstrate the Site's ability to meet critical benchmarks set forth in a feasibility study.

47.    Moreover, the DSA plans were created contemplating a Starwood brand Aloft hotel, and, as Mr. Ambrosi explained, Starwood would not invest any money in the project.

48.    The DSA plans, in relevant part, contemplated an eight story one-wing addition above the existing three story building.  The DSA plans set forth a single wing concept with rooms on both sides of the hallway.  This design only achieved twenty rooms per floor because the length of the wing was limited by the width of the site, for a total of 120 rooms in the eight story building.

- 6 -

49.     This design failed to meet the critical, minimum 140 room criteria set forth in the feasibility study.

50.     These discussions occurred in November 2009.

51.     On January 18, 2010, Mr. Ambrosi contacted Mr. Kaufman stating that he was in New York and would like to visit Mr. Kaufman to discuss the Site and the 2040 Market Street project.

52.     During this meeting, Mr. Ambrosi continued to express his frustration in trying to find a suitable design for the Site which would attract a hotel partner, and preferably a partner that was willing to invest several million dollars of its own money into the development of the hotel.

53.     Kaufman Architects is one of five approved architects for Cambria Suites by Choice Hotels International, which has about 6,000 hotels including the hotel chains of Clarion, Comfort Inn, and Comfort Suites.

54.     Kaufman Architects is also a preferred architect for other hotel interests including Marriott, Hilton, Hyatt, and Holiday Inn.

55.     Mr. Ambrosi sought Mr. Kaufman's counsel for three purposes: 1) to create an architectural plan which satisfied the core components of the feasibility study; 2) to create a design that would conform to the standards of the hotel partners with which Kaufman Architects had long standing relationships, and 3) to present these plans to one of these potential hotel partners and convince that partner to participate as the hotel operator as well as an investor in the project.

56.     At this meeting, Mr. Kaufman explained that the Site was most conducive to a Cambria Suites hotel, which is modeled for the type of hotel visitors anticipated and had a design

philosophy consistent with the attributes of the Site. Further, Choice Hotels International was willing to invest millions of dollars in the project and/or provide other financial enhancements that would not be matched by another brand.

57.     ARC Properties and Kaufman Architect agreed that Kaufman Architect would be the lead architectural firm in designing plans for a multi-use (hotel and residential) complex at the Site, and that Kaufman Architect would act as a consultant communicating the benefits of the site to choice Hotels International.

58.     At the January 18th meeting, Mr. Ambrosi and Mr. Kaufman agreed that Mr. Kaufman would draft plans consistent with the feasibility study and the requirements of a Cambria Suites hotel and that he would submit those plans and present the opportunity to his contacts at Choice Hotels International.

59.     Mr. Ambrosi and Mr. Kaufman agreed that Mr. Kaufman would make contact with Mark Shalala of Choice Hotels International.

60.     Pursuant to that agreement, Mr. Kaufman contacted Mr. Shalala that evening and promoted the site to Choice Hotels International.

61.     Mr. Kaufman persuaded Mr. Shalala that the project offered a great opportunity for Choice Hotels International. Mr. Kaufman created such interest in the project that Mr. Shalala traveled to Philadelphia the next morning to view the Site.

62.     After viewing the Site, Mr. Shalala expressed great interest in bringing a Cambria Suites hotel to the Site as well as a willingness to consider Choice Hotels International's investment of approximately $5 million of its own money in the Site's development.

63.     The project gathered great momentum from that point.

64.       Starting from the January 18, 2010 meeting, Kaufman Architect was included in the on-going discussions about the Site, including emails between it and ARC Properties, FC Development, Urban Development, Michael Salove, and Dale.  Those discussions and emails identified Kaufman Architect as the architect for the project, requested plans to be created, and sought Kaufman Architect's assistance in attracting Choice Hotels International to the Site.

65.       As the project progressed quickly, Kaufman Architect sought confirmation of its roles in the project.  On January 21, 2010, Mr. Ambrosi further acknowledged that Kaufman Architect was serving as the design architect and the relationship promoter and consultant between the project and Choice Hotels International, and stated in writing that "I agree" that Kaufman Architect was the "design architect and [would] get a fee for bringing them in."

66.       Consistent with the agreement, on January 21, 2010, Mr. Ambrosi had DAS forward its CAD drawings for an Aloft Hotel to Kaufman Architect as an example of an unsuccessful design plan.  The DAS plans had failed to meet critical elements of the feasibility study, required construction costs (based on its eight floor design) exceeding the predicted revenue stream, and were configured for a style of hotel inconsistent with a Cambria Suites hotel.

67.       Mr. Ambrosi demanded the Kaufman Architect prepare a new and unique design / drawing for a Cambria Suites hotel at the Site in time for a meeting with Choice Hotels International and ARC Properties the following day.

68.       Kaufman Architect immediately began creating drawings by utilizing its  staff of professionals and significantly relying on its skills and expertise in hotel design, and in particular, its understanding of designs for Choice Hotels International, which is an expertise held by few other architectural firms in the country.

- 9 -

69.      These architectural drawings were created at the direction of ARC Properties and FC Development, and were forwarded to Mr. Ambrosi in time for the meeting with Choice Hotels International and Defendants on January 22, 2010.

70.      As a promoter/consultant and architect for the Site, Mr. Kaufman also participated in this meeting by telephone.

71.      The design created by Kaufman Architect and discussed in this meeting was a six story addition above the three existing stories of the building.  The design provided for a unique, two-wing structure orienting the rooms with an elongated profile.

72.      By utilizing its hotel architectural expertise and its experience in working with Choice Hotels International, the Kaufman Architect plan resulted in decreased construction costs (by the elimination of two additional stories that had been contemplated in the DAS plan), while at the same time increasing the square footage of each room to conform to the Cambria Suites room style and increasing the number of guest rooms per floor to thirty units.

73.      Choice Hotels International and ARC Properties, FC Development, Andi Pesicov, Carl Freedman were pleased with the plans because 1) the construction costs were brought within the guidelines of the feasibility study; 2) the hotel occupancy exceeded the number of rooms contemplated in the feasibility study; 3) the design conformed to the stringent Cambria Suites program model; and 4) ARC Properties, FC Development, Urban Development, and Michael Salove – as developers of the Site – as well as Choice Hotels International, felt comfortable as partners with Kaufman Architect leading the design efforts.

74.      Upon information and belief, ARC Properties, FC Development, Urban Development, and Michael Salove were further  pleased with the meeting because Choice was

the first hotel partner willing to invest its own money in the development of the Site, something other hotels were unwilling to do.

75.    The attendees of this meeting - ARC Properties, Mr. Ambrosi, FC Development, Mr. Freedman, Urban Development, and Michael Salove - also agreed that Kaufman Architect would continue its efforts in designing plans for the Site, as well as continue its role as a consultant and promoter by cultivating the Choice Hotels International relationship in

76.    As a result, Kaufman Architect and Choice Hotels International engaged in an on-going dialogue to address the finer points of the building design.

77.    A meeting was held on February 17, 2010, in ARC Properties' Philadelphia office, between ARC Properties, Carl Freedman, Jason Kessler, Greg Hallquist, Jay Ferraro, Ken Brown, Brad LeBlanc, Steven Stoycos, Choice Hotels International and Kaufman Architect.

78.    Based on plans presented at that meeting, ARC Properties, FC Development, and Choice agreed that Kaufman Architect's plans were acceptable and that the project should move forward.

79.    On February 19, 2010, Mr. Kaufman was personally thanked by Mr. Shalala for introducing Choice Hotels International to the Site and to the project's developers, ARC Properties, FC Development, Urban Development, and Michael Salove.

80.    Shortly thereafter, 401 Race Street Partners and ARC Properties, FC Development, along with Choice Hotels International, entered into a letter of intent agreement and began the process of creating a joint venture agreement.

81.    It was explained by Kaufman Architect that the drafting of a joint venture agreement would take several weeks because the buy-in process of Choice Hotels International

was multi-tiered and required various levels of its management to review the architectural plans and business plans before formally executing the agreement.

82.     Accordingly, it was not surprising to Kaufman Architect that a silent period would ensue during the consideration of the joint venture agreement.

83.     The silent period ended when Kaufman Architect was invited to a "kick off" meeting on June 21, 2010 in ARC Properties' Philadelphia office with the understanding that a joint venture agreement had been executed and that the project was set to begin a new phase.

84.     At this meeting, Kaufman Architect learned for the first time that during the preceding two months 401 Race Street Partners, ARC Properties, FC Development, Urban Development, and Michael Salove had directed Gindhart Design to issue a request for proposals (RFP) for architectural plans for the Site.

85.     Upon information and belief, eighteen architectural firms had been invited to submit drawings.  Kaufman Architect was not invited to participate as a competing firm.

86.     Upon information and belief, Kaufman Architect's copyrighted drawings were provided in the RFP with the explanation and instructions that the Kaufman Architect's plans met the needs for the Site and that the submitting architects should base their proposals on the Kaufman Architect plans.

87.     An architectural firm called Design Collective attended the June 21st meeting and was introduced as the architect for the project.

88.     That meeting marked the first time that Kaufman Architect knew of the involvement of another architectural firm in the project, aside from the DSA plans that had been previously rejected for the Site.

89.     Design Collective presented two drawings: an exterior rendering and a floor plan.

90.    It was explained at that time that the purpose of the meeting was to transition the architectural work from Kaufman Architect to Design Collective.

91.    It was later explained that the transition was necessary - not through any fault, error in design, or dissatisfaction with the design of Kaufman Architect's copyrighted work - but rather, as a result of the failure to invite Kaufman Architect to participate in the RFP process that sought further refined plans.

92.    The Design Collective's building design copies Kaufman Architect's unique two-wing design, core arrangement, combination of rooms oriented in east-west and north-south directions, and configuration of two guest rooms per existing column bay spacing, which was a unique design concept that Kaufman Architect had negotiated with Choice because it constituted a variation of their standard hotel configurations.

93.    At the meeting, Mr. Kaufman requested a private meeting with Carl Freedman of FC Development (Mr. Ambrosi did not attend the meeting) to explain why Kaufman Architect's plans were to be utilized and further developed by Design Collective.  No meaningful response was provided then or afterward despite numerous calls and emails subsequent to the meeting.

94.    At the June 21st meeting, Kaufman Architect also learned that Dale had utilized Kaufman Architect's copyrighted work to create construction plans and estimates.

95.    The copying of the Kaufman Architect plans for the RFP process and further development of the Site and the use of the Kaufman Architect plans to create derivative works as evidenced, by example, in the Design Collective and Dale plans and drawings, were all unauthorized.

96.       Kaufman Architect was further informed at the June 21st meeting that the next step for the project was submission of Design Collective's plans, which are based on Kaufman Architect's plans, to a city regulatory body on July 8, 2010.

97.       Kaufman Architet was also told that, in the interim, 401 Race Street Partners and ARC Properties would reconsider its treatment of Kaufman Architect.

98.       Following the June 21st meeting, Choice Hotels International wrote:

> Gene did inform me of your project back in late January and that is how we (choice) came into the deal. Gene is a preferred architect with Choice Hotels. He was chosen from a select group of top architects from around the country to assist us in our development endeavors for our upscale hotel brand division. His resume and portfolio of complex urban hospitality projects is simply unmatched in our industry. We have developed a strong relationship after working very closely with Gene on several other urban projects for Cambria Suites and have complete confidence in his ability for this location and his command for our design specs and prototype.

99.       The failure to recognize the contribution of Kaufman Architect is also contrary to earlier documents authored by Mr. Ambrosi acknowledging that Kaufman Architect deserved to be recognized as consultant and promoter of this relationship as well as the discussions and writings exchanged by ARC Properties, FC Development, Urban Development, and Michael Salove during the progression of the project from January 2010 to the June 21, 2010 meeting.

100.      It was promised that ARC Properties would articulate Kaufman Architect's role in the project by July 6, 2010, but no response was given.

101.      Based on the representations made at the June 21st meeting and in other telephone conversations following that meeting, Kaufman Architect reasonably believes, based on a good faith investigation, that its plans, or plans constituting derivative works of its plans, will be submitted to city regulatory bodies as early as July 8, 2010.

102.     It is further understood that in the on-going development of the Site, Kaufman Architect is not being credited with its efforts to bring Choice Hotels International to the project.

103.     This project is a unique opportunity.

104.     The Project will encompass a whole city block in a high profile area - one adjacent to Philadelphia's historical district, near the Pennsylvania Convention Center, and with a pictorial views of the Benjamin Franklin Bridge, as well as visibility from a major highway used by visitors to the city.

105.     The project also provides a unique opportunity for Kaufman Architect to expand its presence into Philadelphia with a signature project.  Such an opportunity will provide it with further credentials for other New York projects as well as enhance its reputation as a promoter of relationships between developers and hotel entities.

106.     On July 6, 2010, having not received clarification of its role in the project and the use of its copyrighted plans, Kaufman Architect sent a cease and desist letter to Defendants, wherein Kaufman Architect sought assurances that its plans or derivative works would not be used in the further development of the Site.

107.     The Defendants did not provide such assurances.


## COUNT ONE – COPYRIGHT INFRINGEMENT
### (Against 401 Race Street Partners, ARC Properties, FC Development, Urban Development, Michael Salove, Design Collective, Dale, Gindhart Design)

108.     Plaintiff incorporates the allegations contained in paragraphs 1 through 107 herein.

109.     Kaufman Architect is a nationally recognized architectural firm, particularly in the hotel industry.

110.     Kaufman Architect develops and authors architectural plans that are sold and used in interstate commerce.

111.     As part of its involvement in developing this Site, Kaufman Architect authored several drawings.  True and accurate copies are attached as Exhibit A.

112.     These designs are original works of authorship and constitute copyrightable subject matter under the copyright laws of the United States.

113.     Kaufman Architect is the author of these drawings and the current owner of this copyrighted work.

114.     Kaufman Architect has complied in all respects with the copyright laws of the United States and secured the exclusive rights and privileges in these designs.

115.     Kaufman Architect has registered its drawings with the Copyright Office with an effective registration date of June 30, 2010.  See Exhibit B.

116.     The date of creation of the drawings was on or before January 22, 2010.

117.     Commencing with its first date of providing the drawings to Defendants and continuing throughout, the drawings have been treated by Kaufman Architect in conformity with the copyright laws of the Untied States.

118.     As set forth above, it is believed that 401 Race Street Partners, ARC Properties, FC Development, Urban Development, Michael Salove, Design Collectives, Dale, and Gindhart Design took the Kaufman Architect copyrighted drawings and participated in the unauthorized copying, reproduction, distribution, and use of the drawings, including the solicitation and use of derivative works.

119.     In many cases, and in particular with respect to the derivative works, Race Street Partners, ARC Properties, FC Development, Urban Development, Michael Salove, Design

Collectives, Dale, and Gindhart Design failed to identify Kaufman Architect as the author of the drawings.

120.     Upon information and belief, 401 Race Street Partners ARC Properties, FC Development, Urban Development, and Michael Salove are prepared to submit to city planning commissions derivative works without the authorization of Kaufman Architects.

121.     Through the RFP process and the creation of modified plans, Design Collective, Dale, and Gindhart Design copied and/or created derivative works without authorization.

122.     In particular, Design Collective and Dale have taken Kaufman Architect's original authored documents and created derivative works without permission of Kaufman Architect.

123.     Defendants have participated in infringing activities including but not limited to the copying of the drawings in the preparation of plans to be submitted to city planning commissions.

124.     Defendants' actions violate Kaufman Architect's exclusive copyrights in Kaufman Architect's drawings and those actions further constitute an infringement of Kaufman Architect's copyrights.

125.     Defendants' actions of infringement were knowingly, willful and intentional.

126.     The actions of Defendants consist of commercial use of all or substantially all of an entire work of creative authorship, thereby depriving Kaufman Architect of the market for the work and all potential benefit to Kaufman Architect to exploit his exclusive right in the work.

127.     As author of the plans, Kaufman Architect has exclusive rights in them including the exclusive right to make derivative works.  Defendants have copied and created derivative

works without legal justification. Defendants' actions have caused, and will continue to cause irreparable damage to Kaufman Architect for which there exists no adequate remedy at law.

128.        During the pendency of this action and permanently hereafter Defendants should be enjoined and restrained from copying, preparing derivative works based upon or otherwise infringing upon, directly or indirectly, Kaufman Architect's copyright in the drawings.

129.        Kaufman Architect is entitled to recover all damages suffered as a result of Defendants' wrongful acts, including but not limited to profits obtained by Defendants as a result of their wrongful acts and the loss of profits sustained by Kaufman Architects.  In the alternative Kaufman architect is entitled to recover statutory damages in an amount to be determined by the Court including damages resulting from willful infringement under 17 U.S.C. § 504(c)(2) and additional damages under 17 U.S.C. § 504(d).  Kaufman Architect is also entitled to recover all reasonable attorney's fees court costs and interest form Defendants' infringement.

## COUNT TWO – CONTRIBUTORY COPYRIGHT INFRINGEMENT
### (Against 401 Race Street Partners, ARC Properties, FC Development, Urban Development, Michael Salove, Design Collective, Dale, Gindhart Design, Robert Ambrosi, Carl Freedman)

130.        Kaufman Architect incorporates the allegations contained in paragraphs 1 through 129 herein.

131.        Defendants, 401 Race Street Partners, ARC Properties, FC Development, Urban Development, Michael Salove, Design Collective, Dale, Gindhart Design, Robert Ambrosi, Carl Freedman, with knowledge of infringing activity, induced, caused or materially contributed to the infringing activity of the co-defendants.

132.     These Defendants were aware that Kaufman Architect created an original work of authorship in the creation of the design plans and that such plans were protectable under copyright law.

133.     Despite such knowledge, Defendants induced, caused and materially contributed to the continued copying, reproduction and creation of derivative works in the copyrighted material.

134.     Mr. Ambrosi, as a corporate officer of ARC Properties and 401 Race Street Partners, as well as Mr. Freedman, as a corporate officer of FC Development and 401 Race Street Partners, are joint tortfeasors because their influence dominated the actions of these corporate entities and determined the policies which resulted in the infringement.  Defendants, although having the ability to stop or limit the infringing conduct, failed to take action.

135.     As a result of Defendants' actions, Kaufman Architect has been harmed.


**COUNT THREE– VICARIOUS COPYRIGHT INFRINGEMENT**
**(Against 401 Race Street Partners, ARC Properties, FC Development, Urban Development, Michael Salove, Design Collective, Dale, Gindhart Design, Robert Ambrosi, Carl Freedman)**

136.     Kaufman Architect incorporates the allegations contained in paragraphs 1 through 135 herein.

137.     Defendants had the right and ability to supervise the infringing activity.

138.     Defendants, despite knowing of infringing activity, failed to exercise their right to stop or limit it.

139.     Defendants were aware that Kaufman Architect's plans were subject to copyright protection.

140.     Defendants knowingly allowed the use of the plans without authorization.

- 19 -

141.      Defendants have a direct and obvious financial interest in allowing the infringing activities to continue.

## COUNT FOUR – BREACH OF CONTRACT FOR ARCHITECTURAL WORK (in the alternative to copyright infringement) (Against 401 Race Street Partners, ARC Properties, FC Development, Urban Development, Michael Salove)

142.      Kaufman Architect incorporates the allegations contained in paragraphs 1 through 107 herein.

143.      Kaufman Architect had an agreement with Defendants, 401 Race Street Partners, ARC Properties, FC Development, Urban Development, Michael Salove, to create architectural plans for the Site.

144.      Kaufman Architect fully performed its obligations under the agreement.

145.      Defendants have breached the agreement by denying the existence of an agreement and failing to compensate Kaufman Architect as agreed.

146.      Kaufman Architect is entitled to payment for its work and expertise in drafting architectural plans.

## COUNT FIVE – BREACH OF CONTRACT – CONSULTANT/PROMOTER EFFORTS (Against 401 Race Street Partners, ARC Properties, FC Development, Urban Development, Michael Salove)

147.      Kaufman Architect incorporates the allegations contained in paragraphs 1 through 107 herein.

148.      Kaufman Architect had an agreement with Defendants, 401 Race Street Partners, ARC Properties, FC Development, Urban Development, Michael Salove, to work to bring a hotel interest to the project.

- 20 -

149.     It was agreed that if Kaufman Architect would consult and work to promote a hotel entity interest in managing a hotel at the Site, Kaufman Architect would be 1) recognized as the promoter of that relationship and afforded the opportunity to further market itself as a promoter of such relationships and 2) paid a consultant fee for its efforts.

150.     Kaufman Architect successfully consulted and promoted Choice Hotels International's interest in the Site pursuant to the terms and conditions identified by Defendants.

151.     Despite successfully and completely performing under the agreement, Defendants refuse to recognize Kaufman Architect as a consultant and promoter of that relationship and to compensate Kaufman Architect pursuant to the agreement.

152.     Kaufman Architect has suffered a loss as a result of Defendants' nonperformance.

153.     Kaufman Architect is irreparably harmed by the loss of the reputation as the consultant/promoter for this unique opportunity.

154.     Kaufman Architect is further harmed by the failure of Defendants to pay a fee for the services.

## COUNT SIX – UNJUST ENRICHMENT DESIGN WORK
### (in the alternative to copyright infringement)
### (Against 401 Race Street Partners, ARC Properties, FC Development, Urban Development, Michael Salove)

155.     Kaufman Architect incorporates the allegations contained in paragraphs 1 through 107 herein.

156.     Defendants, 401 Race Street Partners, ARC Properties, FC Development, Urban Development, Michael Salove, induced Kaufman Architect to incur great cost and provide unique expertise in the creation of architectural drawings for the Site.

157.    As a result, Defendants gained the benefit of design plans which allowed them to advance a project that was otherwise stalled.

158.    Defendants have not compensated Kaufman Architects in any manner for its work and expertise.

159.    As a result, Kaufman Architect was denied the costs it has expended and its reasonable profits.

160.    It would be inequitable for Defendants to retain the benefits derived from the work and expertise of Kaufman Architect without compensation.

## COUNT SEVEN – UNJUST ENRICHMENT – CONSULTANT/PROMOTER EFFORTS
### (Against 401 Race Street Partners, ARC Properties, FC Development, Urban Development, Michael Salove)

161.    Kaufman Architect incorporates the allegations contained in paragraphs 1 through 107 herein.

162.    Defendants, 401 Race Street Partners, ARC Properties, FC Development, Urban Development, Michael Salove, induced Kaufman Architect to incur great cost and to utilize their skill, expertise and reputation in consulting and promoting interest by a hotel entity interested in managing a hotel at the Site as well as investing development fees in the project.

163.    Kaufman Architect, through its efforts, obtained, introduced, cultivated, and finalized a relationship between Defendants and Choice Hotels International.

164.    Defendants have not compensated Kaufman Architect in any manner for its work and expertise.

165.    As a result, Kaufman Architect was denied the costs it has expended and its reasonable profits.

166.     It would be inequitable for Defendants to retain the benefits derived from the work and expertise of Kaufman Architect without compensation.

167.     Kaufman Architect has also been denied the reputational benefit of being associated with cultivating and promoting this relationship.

168.     As a premier designer of hotels, Kaufman Architect has developed substantial relationships and a valued reputation in the industry for bringing hotel interests to developing projects and being able to promote them into unique and successful business opportunities for these hotel entities.

169.     Kaufman Architect has been denied that opportunity despite its efforts.

## COUNT EIGHT – PROMISSORY ESTOPPEL – DESIGN EFFORT
### (Against 401 Race Street Partners, ARC Properties, FC Development, Urban Development, Michael Salove)

170.     Kaufman Architect incorporates the allegations contained in paragraphs 1 through 107 herein.

171.     Defendants, 401 Race Street Partners, ARC Properties, FC Development, Urban Development, Michael Salove, promised that Kaufman Architect would be retained as architect for the project and that it would be paid all architectural fees for the project.

172.     Defendants made this promise reasonably expecting that Kaufman Architect would rely on such promises and that such promises would induce Kaufman Architect to act.

173.     Kaufman Architect reasonably relied on those promises and took substantial efforts to develop architectural plans for the Site.

174.     If Defendants' promise to pay all architectural fees to Kaufman Architect for this project were enforced, it would avoid an injustice.

- 23 -

## COUNT NINE – PROMISSORY ESTOPPEL – CONSULTANT/PROMOTER EFFORTS
### (Against 401 Race Street Partners, ARC Properties, FC Development, Urban Development, Michael Salove)

175.    Kaufman Architect incorporates the allegations contained in paragraphs 1 through 107 herein.

176.    Defendants, 401 Race Street Partners, ARC Properties, FC Development, Urban Development, Michael Salove, promised that Kaufman Architect would achieve a reputational benefit from being deemed a consultant/promoter of a hotel partner in the project as well as being paid a fee for finding a suitable hotel partner.

177.    Defendants made this promise reasonably expecting that Kaufman Architect would rely on such promises and that such promises would induce Kaufman Architect to act.

178.    Kaufman Architect reasonably relied on those promises and took substantial efforts to introduce and promote a relationship between Defendants and Choice Hotels International.

179.    If Defendants' promise to pay all fees to Kaufman Architect for this project were enforced, it would avoid an injustice.

## COUNT TEN – CONVERSION
### (Against 401 Race Street Partners, ARC Properties, FC Development, Urban Development, Michael Salove, Design Collective, Dale, Gindhart Design)

180.    Kaufman Architect incorporates the allegations contained in paragraphs 1 through 179 herein.

181.    Defendants, 401 Race Street Partners, ARC Properties, FC Development, Urban Development, Michael Salove, Design Collective, Dale, Gindhart Design, intentionally acquired

copies of Kaufman Architect's architectural drawings including electronic copies without compensation.

182.    Defendants currently exercise complete control over those plans.

183.    Defendants have intentionally used the plans and have not returned the physical plans or electronic files to Kaufman Architect.

184.    Defendants received a benefit from the plans that have a substantial market value incapable of being calculated at this time.

## COUNT ELEVEN – CONSPIRACY
### (Against 401 Race Street Partners, ARC Properties, FC Development, Urban Development, Michael Salove, Design Collective, Dale, Gindhart Design)

185.    Kaufman Architect incorporates the allegations contained in paragraphs 1 through 184 herein.

186.    Defendants, 401 Race Street Partners, ARC Properties, FC Development, Urban Development, Michael Salove, Design Collective, Dale, Gindhart Design, intentionally conspired to deprive Kaufman Architect of its intellectual property and rights to be deemed the developer of the relationship between Choice Hotels International and the Site and the fees associated with that effort.

187.    Defendants intentionally planned to have Kaufman Architect exert time, money and unique skills in the development of architectural plans while knowing the entire time that they did not intend to compensate or credit Kaufman Architect for such work.

188.    Defendants intentionally planned to have Kaufman Architect expend its efforts and place its reputation on the line in finding a suitable hotel interest to manage a hotel at the Site and to invest its own money in the development of the Site.

189.     Defendants conspired to induce Kaufman Architect to use its reputation as one of the premier architects of Choice Hotels International to forge an interest in the Site with that entity.

190.     At all times, Defendants plotted that following Kaufman Architect's introduction and cultivation of the relationship of Choice Hotels International and the Site, it would deny Kaufman Architect the right to be deemed the consultant/promoter of that relationship and to derive a fee for such work.

191.     Kaufman Architect has been harmed by Defendants' conspiracy.

## COUNT TWELVE – TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONSHIP
### (Against 401 Race Street Partners, ARC Properties, FC Development, Urban Development, Michael Salove)

192.     Kaufman Architect incorporates the allegations contained in paragraphs 1 through 191 herein.

193.     Defendants, 401 Race Street Partners, ARC Properties, FC Development, Urban Development, Michael Salove, intentionally interfered with Kaufman Architect's prospective contractual relationships with Choice Hotels International.

194.     Through great effort, time and money, Kaufman Architect had developed a relationship with Choice Hotels International.

195.     Through those efforts, Kaufman Architect had been awarded the distinction of one of only a few architectural firms authorized to design Choice Hotel International projects.

196.     By cutting Kaufman Architect out of this project and introducing other architectural firms to Choice Hotels International, Kaufman Architect's prospective contractual relations with Choice Hotels International have been harmed.

197.    Defendants' actions were not justified.

198.    It was reasonable for Kaufman Architect to expect future contractual relationships with Choice Hotels International.

199.    Choice Hotels International has indicated that if Defendants opt to use another architectural firm that they will continue with the project to the detriment of Kaufman Architect.

200.    Kaufman Architect has been harmed and such harm is directly and proximity caused by Defendants' actions.

## COUNT THIRTEEN – DECLARATORY JUDGMENT
### (Against 401 Race Street Partners, ARC Properties, FC Development, Urban Development, Michael Salove, Design Collective, Dale, Gindhart Design)

201.    Kaufman Architect incorporates the allegations contained in paragraphs 1 through 200 herein.

202.    This is an action seeking declaratory judgment under 28 U.S.C. § 2202.

203.    There is an actual and present controversy between Kaufman Architect and Defendants as set forth above.

204.    There is a prompt need for a declaration as to who is responsible for bringing Choice Hotels International to the Site.

205.    As the consultant and promoter of that relationship, Kaufman Architect is entitled to be declared the promoter of that relationship which brings intangible benefits as well as to be awarded a fee for such efforts.

206.    Kaufman Architect requests that the Court enter a declaratory judgment as to the rights and duties of Defendants with respect to development of the relationship with Choice Hotels International and that such judgment be in accordance with the requested claim for relief.

WHEREFORE, Kaufman Architect prays:

1.     The entry of an injunction pursuant to 17 U.S.C. §§ 502 and 1203(b) prohibiting further infringement or use of its copyrighted works by any of the defendants, their agents, representatives or contractors, and requiring them to return all infringing copies, variations, and derivative works to Kaufman Architect.

2.     That this Court find that Defendants' acts and use of Design Collective's architectural plans and Dale's plans constitutes an infringement of Kaufman Architect's copyrights.

3.     That this Court grant Kaufman Architect's request for an accounting of all profits and damages resulting from Defendants' activities.

4.     That this Court award statutory damages and attorneys' fees and costs as allowed under the Copyright Act.

5.     That this Court declare Kaufman Architect a consultant and promoter of the relationship of Choice Hotels International to the Site.

6.     That this Court grant an injunction prohibiting Defendants  from attributing the success of bringing Choice Hotels International to this project other than Kaufman Architect.

7.     That this Court grant an injunction prohibiting any fees to be paid to anyone other than Kaufman Architect for the promoting of the relationship with Choice Hotels International.

8.     That this Court award damages including, but not limited to, an appropriate fee for all architectural work already performed and for value of architectural work that could have been anticipated on this project as well as fees associated with finding and developing the relationship between the Site and Choice Hotels International.

9.     That this Court provide such other relief as it deems just and proper.

- 28 -

CONRAD O'BRIEN PC


By: _____
Frank R. Emmerich Jr., Esquire
Lorie K. Dakessian, Esquire
Attorney I.D. Nos. 76109, 86102
CONRAD O'BRIEN PC
1515 Market Street, 16th Floor
Philadelphia, PA 19102-1921
Phone: (215) 864-9600
Fax: (215) 864-9620
Email: femmerich@conradobrien.com,
ldakessian@conradobrien.com

Dated: July 8, 2010

# EXHIBIT A

LOBBY

BAR

KITCHEN

OPEN TO BELOW

DINING

RECEPTION

SUNDRIES

SPA VESTIBULE

OFFICE

WORK CENTER

STORAGE

OFFICE

POOL 2,974 SF

D.O.S. OFFICE

FITNESS CENTER 1,258 SF

WOMEN'S RESTROOM

LAUNDRY

MEN'S RESTROOM

LUGGAGE STORAGE

POOL EQUIPMENT

POOL MECHANICAL

PRE-FUNCTION

MEETING ROOM A

MEETING ROOM B

STORAGE

TERRACE

BUILDING BELOW

BUILDING ABOVE

STORAGE

OFFICE

CONFERENCE

STORAGE

STORAGE

16,548 SF

CAMBRIA SUITES

**GENE KAUFMAN ARCHITECT PC**

401 RACE STREET
PHILADELPHIA, PA

FOURTH FLOOR PLAN

DATE: FEBRUARY 17, 2010
SCALE: 1/16" = 1'-0"
DRAWING NUMBER:

SK-1



14,710 SF

**CAMBRIA SUITES**

**KEY COUNT:**
1 ACC. KING SUITE
5 D/D SUITES
1 KING EXEC. SUITE
21 KING SUITES
1 1 BEDROOM SUITE
1 2 BEDROOM SUITE
30 SUITES PER FLOOR
x 5 FLOORS
= 150 SUITES TOTAL

**GENE KAUFMAN ARCHITECT PC**
375 BROADWAY, NEW YORK, N.Y. 10012
TEL. (212) 625-6700  FAX. (212) 625-6657

401 RACE STREET
PHILADELPHIA, PA

TYPICAL PLAN

DATE: FEBRUARY 17, 2010
SCALE: 1/16" = 1'-0"
DRAWING NUMBER:

SK-2

PROPOSED RESIDENTIAL BUILDING
(14,710 SF)

LOWER ROOF
(14,019 SF)

UPPER ROOF
(12,078 SF)

STEPS DOWN

EX SIDEWALK

CAMBRIA
SUITES

GENE KAUFMAN ARCHITECT PC
525 BROADWAY, NEW YORK, N.Y. 10012
TEL. (212) 625-6700  FAX. (212) 625-6907

401 RACE STREET
PHILADELPHIA, PA

SITE PLAN

DATE: FEBRUARY 17, 2010
SCALE: NOT TO SCALE
DRAWING NUMBER:

SK-3



LINE OF FLOOR ABOVE

HOTEL ENTRY LOBBY

STEPS

RAMP

CAMBRIA SUITES

GENE KAUFMAN ARCHITECT PC
525 BROADWAY, NEW YORK. N.Y. 10012
TEL. (212) 625-6700 FAX. (212) 625-6887

401 RACE STREET
PHILADELPHIA, PA

GROUND FLOOR PLAN

DATE: FEBRUARY 17, 2010
SCALE: NOT TO SCALE
DRAWING NUMBER:

SK-4



OPEN TO HOTEL
ENTRY LOBBY BELOW

**CAMBRIA SUITES**

**GENE KAUFMAN ARCHITECT PC**
525 BROADWAY, NEW YORK, N.Y. 10012
TEL. (212) 625-6700 FAX. (212) 625-6867

401 RACE STREET
PHILADELPHIA, PA

SECOND AND THIRD
FLOOR PLAN

DATE: FEBRUARY 17, 2010
SCALE: NOT TO SCALE

DRAWING NUMBER:

SK-5



# EXHIBIT B

-----Original Message-----
From: paygovadmin@mail.doc.twai.gov [mailto:paygovadmin@mail.doc.twai.gov]
Sent: Tuesday, June 29, 2010 4:37 PM
To: gene@gkapc.com
Subject: Pay.Gov Payment Confirmation

THIS IS AN AUTOMATED MESSAGE.  PLEASE DO NOT REPLY.

Your transaction has been successfully completed.

Transaction Summary

Application Name: Copyright Fee Services
Pay.gov Tracking ID: 251274V4
Agency Tracking ID: 1-77DEHI

Account Holder Name: Gene Kaufman Arch PC
Transaction Type: Sale
Transaction Amount: $35.00
Billing Address: 525 Broadway
City: New York
State/Province: NY
Country: USA
Card Type: American Express
Card Number: ***********3009
Transaction Date: Jun 29, 2010 4:37:16 PM

-----Original Message-----
From: paygovadmin@mail.doc.twai.gov [mailto:paygovadmin@mail.doc.twai.gov]
Sent: Tuesday, June 29, 2010 5:03 PM
To: gene@gkapc.com
Subject: Pay.Gov Payment Confirmation

THIS IS AN AUTOMATED MESSAGE.  PLEASE DO NOT REPLY.

Your transaction has been successfully completed.

Transaction Summary

Application Name: Copyright Fee Services Pay.gov Tracking ID: 25127904 Agency Tracking ID: 1-
77DELD

Account Holder Name: Gene Kaufman Arch PC Transaction Type: Sale Transaction Amount: $35.00
Billing Address: 525 Broadway
City: New York
State/Province: NY
Zip/Postal Code: 10012
Country: USA
Card Type: American Express
Card Number: ***********3009
Transaction Date: Jun 29, 2010 5:03:15 PM

## **VERIFICATION**

I, Gene Kaufman, hereby verify that the statements made in the foregoing pleading are true and correct to the best of my knowledge, information and belief. The undersigned understands that any false statements herein are made subject to the penalties of 18 Pa. C.S.A., Section 4904 relating to unsworn falsification to authorities.

_____
Gene Kaufman

Dated:

Sworn to before me
this 7th day of
July, 20 10

ABDUL SCOTT
Notary Public, State of New York
Qualified in Kings County
Reg. No. 01SC6212934
My Commission Expires 10-26-2013